UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CARMEN GARCIA,

                        Plaintiff,

-against-

YONKERS BOARD OF EDUCATION,
EDWIN QUEZADA, ANGELA ARIAS,
RAFAEL PASIAN, ANTOINE ATINKPAHOUN,
and RAMON MARTINEZ

                        Defendants.

15 Civ. 0767 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Carmen Garcia ("Plaintiff") commenced this action by complaint filed February 2, 2015 and amended on June 26, 2015, against defendants Edwin Quezada, Angela Arias, Rafael Pasian, Antoine Atinkpahoun, Ramon Martinez (collectively, "Individual Defendants"), and Yonkers Board of Education ("YBOE") (together with Individual Defendants, "Defendants"). Plaintiff asserts gender discrimination and retaliation claims in violation of her rights under (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"); (2) the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290–97; and (3) Westchester County Human Rights Law ("WHRL") § 700.01. Plaintiff also brings a breach of contract claim against YBOE for a violation of the collective bargaining agreement ("CBA") with the Yonkers Federation of Teachers ("YFT").

    Defendants now move to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/27/2016

claim upon which relief can be granted, respectively. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

All facts are taken from the Amended Complaint and are accepted as true for the purposes of this motion.[1] Plaintiff has been employed by the City of Yonkers School District (the "District") since 2000 and was assigned to a mathematics teaching position at Lincoln High School ("LHS") in 2001. (Am. Compl., ECF No. 11, ¶¶ 27-28, 32.) Plaintiff consistently received satisfactory evaluations from her supervisors and enjoyed success and growth in her classroom. (*Id.* ¶¶ 34-35.)

Beginning in the 2006 – 2007 school year, Plaintiff was sexually harassed by fellow mathematics teacher, Defendant Pasian. (*Id.* ¶ 38.) According to Plaintiff, Defendant Pasian began by repeatedly asking her to go out for drinks, and his behavior escalated to the point where Pasian "told [Plaintiff] that he had a dream about her where he was licking her body, and then pushed [her] into an empty classroom, hovered over her, put his arms around her, and was saying they should be together." (*Id.* ¶ 40.) On the day following this incident, Plaintiff reported the conduct to the school principal, Defendant Quezada, and his assistant, Defendant Arias. (*Id.* ¶ 41.) Defendant Arias assured Plaintiff that she would talk to Defendant Pasian regarding his conduct. (*Id.* ¶ 42.)

When Plaintiff returned for the 2007 – 2008 school year, Defendant Quezada placed her in the same classroom as Defendant Pasian. (*Id.* ¶ 45.) Plaintiff immediately reported her issues

---

[1] Defendants additionally offer factual findings from the 3020-a Hearing and contend that the Court may accept those findings, which are entitled to preclusive effect in this action. (Defs.' Memo, at 6.) Plaintiff argues that she was not entitled a full and fair opportunity to litigate the issues at the 3020-a Hearing and the Court should therefore not consider these factual findings. (Pl.'s Memo, 8-13.) The Court need not decide the issue, however, because the motion to dismiss can be decided on the merits without considering the factual findings of the 3020-a Hearing, which would not affect the Court's decision. *See* Section III, *infra.*

with Defendant Pasian to a school administrator, Jeff Olender, who arranged for a room change. (*Id.* ¶¶ 45-46.) Despite the room change, Defendant Pasian continued the sexual harassment, including by making sexual comments and gestures to Plaintiff and sending students to Plaintiff with inappropriate messages. (*Id.* ¶ 48.) The harassment persisted in the 2008 – 2009 school year, when another mathematics teacher, Defendant Atinkpahoun told Plaintiff that "if she wanted to continue working at [LHS], the Principal, Defendant Quezada, said that everything in [Plaintiff's] teaching career would be better if she has a sexual orgy with Defendants Quezada, Martinez, and Arias." (*Id.* ¶ 50.) Plaintiff alleges that the Defendants continued to engage in this behavior until 2012, when Plaintiff was transferred out of LHS to the YBOE Central Office. (*Id.* ¶¶ 52, 55, 62.)

    Prior to her transfer, on March 6, 2012, one of Plaintiff's students was misbehaving in her classroom, and Plaintiff called a school safety officer, who temporarily removed the student from the class. (*Id.* ¶ 57.) The next day, the same student misbehaved, and Plaintiff once again called the safety officer. (*Id.* ¶ 58.) Instead of the safety officer, a school administrator arrived and removed Plaintiff, rather than the student, from the classroom and asked for her description of the incident. (*Id.*) Defendant Quezada required Plaintiff to meet with a YBOE administrator, and Plaintiff was transferred to a position at another school. (*Id.* ¶ 60; Affirmation of Barry D. Haberman in Opposition to the Motion to Dismiss, ECF No. 21, Ex. 5, at 2.) Plaintiff alleges that Defendants used this incident as a pretext to disguise the true motivation for her transfer: discriminatory retaliation. (Amend. Compl. ¶ 60; Affirmation of Barry D. Haberman in Opposition to the Motion to Dismiss, ECF No. 21, Ex. 1, at 4.) Plaintiff continued to report her sexual harassment to YBOE and eventually, in February 2013, to the Yonkers Police Department. (Amend. Compl. ¶¶ 62-63.)

3

On June 24, 2013, Defendant YBOE filed disciplinary charges against Plaintiff concerning the March 2012 incident with a student and for failure to report to work. (*Id*. ¶ 74.) A hearing was held pursuant to New York Education Law § 3020-a (the "§3020-a Hearing") on October 22, 2013, and Plaintiff provided the hearing officer with a copy of the Yonkers Police Report she filed regarding the harassment. (*Id*. ¶ 77-78.) Plaintiff alleges that after Defendants presented their case, "[t]he parties conducting the hearing went outside, and when they returned, the hearing was abruptly ended and thus [Plaintiff] was prohibited from presenting her sexual harassment claims and defenses to the charges brought against her." (*Id*. ¶ 78.) Following the hearing, Plaintiff was terminated on November 29, 2013. (*Id*. ¶ 79.)

## STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court must thus "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[ ]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of

4

action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662) (internal quotation marks omitted). A plaintiff must provide "more than labels and conclusions" to show he is entitled to relief. *Twombly*, 550 U.S. at 555.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings." *Zappia Middle E. Const. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

## DISCUSSION

### I. Title VII Discrimination

Defendants move to dismiss Plaintiff's Title VII claims on the basis that the claims are untimely. Title VII's statute of limitations bars claims based on events occurring more than 300 days prior to filing a charge of discrimination with a state or local employment agency. 42 U.S.C. § 2000e–5(e)(1); *Lange v. Town of Monroe*, 213 F.Supp.2d 411, 418 (S.D.N.Y.2002). *See also Butts v. City of New York Dep't of Hous., Pres. & Dev.,* 990 F.2d 1397, 1401 (2d Cir. 1993) ("In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days."). Plaintiff filed her New York State Division of

Human Rights ("NYSDHR") complaint simultaneously with her Equal Employment Opportunity Commission ("EEOC") complaint on March 24, 2014. (Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl.'s Memo"), ECF No. 22, at 14; Amend. Compl. ¶ 21.) Defendants assert that, therefore, any claims stemming from discriminatory conduct occurring before May 29, 2013 (300 days prior to March 24, 2014) are time-barred. (Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Memo"), ECF No. 20, at 13.) In response, Plaintiff contends that the claims are not barred because she was subject to a hostile work environment and the discrimination was a continuing violation. (Pl.'s Memo, at 14-15.) As an initial note, it is clear that the retaliation claim is not barred by the statute of limitations, because the adverse employment actions alleged—both the disciplinary charges[2] and the termination—occurred within the 300 days prior to Plaintiff's filing of the state and federal complaints.

Plaintiff alleges that she was subjected to sexual harassment during her employment at LHS, from at least 2006 through 2012, and that the timely retaliatory actions constitute a continuing violation or are a part of a hostile work environment. (*See* Pl.'s Memo, at 5 ("Ms. Garcia was continuously subjected to this type of harassment … through the date Ms. Garcia was transferred out of LHS in 2012."); Pl.'s Memo, at 14 ("The acts of Defendants constitute a clear continuing violation rendering this action timely.")) It is true that a "[h]ostile work environment claim[] may ... be based on events outside the statute of limitations period as long as (1) the acts occurring before the ... cutoff constitute 'part of the same actionable hostile work environment practice,' and (2) at least one act contributing to the claim occurs within the filing period." *Clarke v. Intercontinental Hotels Grp.*, PLC, No. 12 Civ. 2671, 2013 WL 2358596, at *8

---

[2] Disciplinary charges leading to adverse findings can be considered adverse employment actions. *Morales v. City of New York Dep't of Juvenile Justice*, No. 10 CIV. 829 JGK, 2012 WL 180879, at *6 (S.D.N.Y. Jan. 23, 2012); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 474 (S.D.N.Y. 2011); *Ayiloge v. City of New York*, No. 00 CIV. 5051 (THK), 2002 WL 1424589, at *12 (S.D.N.Y. June 28, 2002). *See generally Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 223-24 (2d Cir. 2001).

(S.D.N.Y. May 30, 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002)). Additionally, "a continuing violation may be found where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (internal citations and quotation marks omitted). However, discrete acts are different in kind from hostile environment claims and do not constitute a continuing violation. *See Avila-Blum v. Casa de Cambio Delgado, Inc.,* 519 F. Supp. 2d 423, 428-29 (S.D.N.Y. 2007) (citing *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002)) ("Hostile environment claims are different in kind from discrete acts. The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."); *Chin v. Port Auth. of New York & New Jersey,* 685 F.3d 135, 156 (2d Cir. 2012) ("discrete acts of discrimination … do not implicate the continuing-violation doctrine").

    Here, Plaintiff was transferred out of LHS in 2012, and the discriminatory conduct—as opposed to the retaliatory conduct—occurred prior to her transfer. It is well-settled law that "transfers ... are [] discrete acts which do not constitute a continuing violation" for statute of limitations purposes. *Crosland v. City of New York*, 140 F.Supp.2d 300, 308 (S.D.N.Y.2001). *See also Nat'l R.R. Passenger Corp.,* 536 U.S. at 114 (2002) (failure to promote and denial of transfers are discrete acts of discrimination that are not amenable to continuing violation exception); *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir. 1997) ("Completed acts such as a termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment, are not acts of a 'continuing' nature."); *Fanelli v. New York*, 51 F. Supp. 3d 219, 228 (E.D.N.Y. 2014) ("it is well-established that transfers are discrete acts that do

not constitute a continuing violation for statute of limitations purposes"); *Walia v. Napolitano*, 986 F.Supp.2d 169, 179–80 (E.D.N.Y. 2013) (finding that undesirable work transfers are discrete acts that cannot be considered as part of an ongoing pattern or policy of discrimination). Thus, Plaintiff's transfer and eventual termination are discrete acts of retaliation, not a continuing violation of discrimination. Plaintiff's claims stemming from discriminatory acts occurring before May 29, 2013, therefore, must be dismissed as untimely. *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 133–34 (2d Cir. 2003) ("Failure to timely file a charge with the EEOC renders a Title VII claim time-barred, thereby preventing a claimant from bringing her claim in federal court."). Because all of Plaintiff's allegations of discrimination—not retaliation—occur before the 2012 transfer, Plaintiff's Title VII discrimination claims are accordingly dismissed.

## II.   Title VII - Individual Defendants

The Second Circuit has determined that the remedial provisions of Title VII do not provide for individual liability. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-14 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Moreover, "an employer's agent may not be held individually liable under Title VII, even if she has supervisory control over the Plaintiff." *Boyd v. Presbyterian Hosp. in City of New York*, 160 F. Supp. 2d 522, 534 (S.D.N.Y. 2001). Plaintiff urges the Court to consider allowing Title VII claims against individuals in their official capacities as agents of their employers and cites to *Gray v. Shearson Lehman Bros.*, 947 F. Supp. 132, 136 (S.D.N.Y. 1996) for support. In *Gray*, however, the Court explicitly held that "the [Title VII] statute itself does not provide for [suits against individuals in their official capacities], and they are not necessary to impose liability on the employer; the statute itself does that. No matter what benefits may accrue by permitting official capacity suits, there is nothing to show that Congress intended to permit suits against individuals in their official capacity." *Id.*

Therefore, Plaintiff cannot assert any Title VII retaliation claims[3] against the Individual Defendants, even in their official capacities, and all such claims are dismissed.

### III.    Title VII Retaliation

Defendants contend that Plaintiff has not alleged a prima facie case of retaliation because she has failed to demonstrate the requisite causal connection. In order to state a claim for retaliation, a Plaintiff must allege that: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citing *Kessler v. Westchester Department of Social Services*, 461 F.3d 199, 205-06, 207-10 (2d Cir. 2006)).

Though a causal connection may be alleged indirectly by showing temporal proximity between the protected activity and the adverse employment action, the Supreme Court has noted that "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). However, the Second Circuit has not established a specific delay that defeats an inference of causation. *Gorman–Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554–55 (2d Cir. 2001) (listing cases in the context of Title VII retaliation). Courts have held that a delay of three months was fatal to a showing of causation, *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990), and also that a delay of eight months supported a showing of causation, *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46

---

[3] Though already dismissed on the basis that they were untimely, Plaintiff's Title VII discrimination claims against the Individual Defendants would additionally fail on this ground.

(2d Cir. 1980). In the instant case, the parties dispute the relevant protected activity and adverse employment action for purposes of measuring temporal proximity.

Defendants contend that, at the latest, Plaintiff engaged in protected activity in February 2013 when she filed a police report with the City of Yonkers (Defs.' Memo, at 14), whereas Plaintiff contends that the most recent protected activity occurred in October 2013, when she provided the hearing officer with a copy of the police report detailing the alleged harassment.[4] (*See* Pl.'s Memo, at 16). On reply, Defendants fail to address Plaintiff's argument regarding the October 2013 protected activity. (*See generally* Reply Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 23.) Though it is not clear that Plaintiff's conduct at the October 2013 hearing constitutes protected activity under Title VII,[5] the Court need not

---

[4] The Second Circuit has not explicitly addressed the issue of whether a police report can constitute a protected activity under Title VII. *See Labonia v. Doran Assocs., LLC,* No. 01–2399, 2004 WL 1921005, at * 10 (D.Conn. Aug.25, 2004). However, various other circuit courts have considered the issue and held that a police report does qualify as protected activity. *Id.* (citing *Worth v. Tyer,* 276 F.3d 249, 265 (7th Cir. 2001); *EEOC v. Dinuba Med. Clinic,* 222 F.3d 580, 586 (9th Cir. 2000)). Moreover, the Southern District of New York has held that a police report will be considered a protected activity where the activity alleged in the police report is clearly part of the discriminatory conduct alleged under Title VII. *Castagna v. Luceno*, No. 09-CV-9332 CS, 2011 WL 1584593, at *21 (S.D.N.Y. Apr. 26, 2011), *aff'd,* 744 F.3d 254 (2d Cir. 2014), *and aff'd,* 558 F. App'x 19 (2d Cir. 2014); *Williams v. City of N.Y.,* No. 99–2697, 2006 WL 2668211 (S.D.N.Y. Sept.11, 2006). In the instant case, Plaintiff filed a police report detailing the alleged sexual harassment, which is part of the gender discrimination she alleges in the Amended Complaint. Thus, the police report constitutes protected activity.

[5] In the Amended Complaint, Plaintiff alleges that she attempted but was unable to present a defense to the charges on the basis of sexual harassment/discrimination. (Amend. Compl. ¶¶ 78-79.) Plaintiff states that she provided "those conducting the hearing with a copy of the Yonkers Police Report," but before she was able to present her sexual harassment claims and defenses, "the hearing was abruptly ended." (Amend. Compl. ¶ 78.) Based on the allegations in the Amended Complaint, it does not appear that Plaintiff in fact articulated to the hearing officer or to the District any facts or circumstances regarding her complaint of unlawful discrimination. Thus, Plaintiff's assertion that her conduct at the hearing constitutes protected activity is merely based on her presentation to the hearing officer of a copy of the Yonkers police report.

The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination. *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 566 (2d Cir. 2000). A plaintiff need not formally oppose the alleged discriminatory behavior; it is enough that the plaintiff informally protest the unlawful practice. *Hubbard v. Total Commc'ns, Inc.,* 347 F. App'x 679, 681 (2d Cir. 2009). Thus, protected activities include both formal protests, such as instituting litigation or filing a formal complaint, and informal protests, such as making complaints to management, writing critical letters to customers, and protesting against discrimination by industry or by society in general. *Hubbard*, 347 F. App'x at 681; *Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014). On this basis, courts have extended protected activity to include virtually every instance in which an employee communicates to her employer a belief that the employer has engaged in unlawful discrimination. *Nyeneime Ibok v. Sec. Indus. Automation Corp.,* 05 Civ. 6584, 2009 WL 855926 at *8 (S.D.N.Y. Mar. 26, 2009) (paraphrasing *Crawford v. Metro. Gov't* ), *aff'd in part, rev'd in part on other grounds,* 369 Fed.Appx. 210 (2d Cir. 2010).

decide this issue because, in any event, Defendants' temporal proximity argument fails. Four months separate Plaintiff's filing of the police report[6] in February 2013 and Defendants' filing of disciplinary charges against Plaintiff in June 2013. Defendants argue that even three to four months is insufficient to establish causation and cite cases dismissing retaliation claims with a similar temporal gap. *See, e.g., Cooper v. Morgenthau,* No. 99 CIV. 11946 (WHP), 2001 WL 868003, at *8 (S.D.N.Y. July 31, 2001) (collecting cases). The cases cited by Defendants, however, dismiss retaliation claims on motions for summary judgment, where the Plaintiff—after ample opportunity for discovery—is unable to establish a causal connection with any evidence other than temporal proximity. *See Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001*); Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85-86 (2d Cir. 1990); *Ponticelli v. Zurich Am. Ins. Grp.*, 16 F. Supp. 2d 414, 436 (S.D.N.Y. 1998). On a motion to dismiss, Plaintiff's burden is much lower. As a Southern District court recently explained:

> [Plaintiff's temporal proximity] argument, if made at the summary judgment stage, might prove unavailing. *See, e.g.*, *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932–33 (2d Cir. 2010) (per curiam) (noting that the plaintiff "arguably" established a prima facie Title VII retaliation claim by demonstrating temporal proximity but concluding that such temporal proximity—without more—was insufficient to show that the defendant's proffered reason for discharging the plaintiff was pretextual); *see also Padob v. Entex Info. Serv.*, 960 F.Supp. 806, 814 (S.D.N.Y. 1997) (granting summary judgment for the defendant on the plaintiff's retaliatory discharge claim where, "other than temporal proximity, [the] [p]laintiff herself offer[ed] no other evidence of such a causal connection," instead hinging her retaliatory discharge claim on the grounds that she was at the company for nine years); *Philippeaux v. Fashion Institute of Tech.*, No. 93–CV–4438, 1996 WL 164462, at *9 (S.D.N.Y. Apr. 9, 1996) ("[T]emporal proximity alone is not

---

Though reporting the conduct to an employer is clearly protected, it is less clear that merely providing a copy of a police report to an administrative hearing officer constitutes a discrete, protected activity sufficient to reset the clock for the analysis of temporal proximity. Additionally, from the allegations in the Complaint, it is unclear whether, at the hearing, Plaintiff in fact communicated to her employer anything regarding the allegedly unlawful discrimination.

[6] In February 2013, Plaintiff also reported the conduct to her supervisors – an additional protected activity. (Amend. Compl. ¶ 73.)

> necessarily dispositive of a causal connection evidencing a retaliatory motive."), *aff'd*, 104 F.3d 356 (2d Cir. 1996). Although the question is, of course, much closer at the motion to dismiss stage, where temporal proximity alone may be enough, *see, e.g.*, *Purdie v. City Univ. of N.Y.*, No. 13–CV–6423, 2015 WL 129552, at *11 (S.D.N.Y. Jan. 8, 2015).

*Wang v. Palmisano*, No. 13-CV-2186 (KMK), 2016 WL 319862, at *14 (S.D.N.Y. Jan. 26, 2016). *See also Day v. City of New York*, No. 15CIV4399GBDHBP, 2015 WL 10530081, at *12 (S.D.N.Y. Nov. 30, 2015), *report and recommendation adopted*, No. 15CV04399GBDHBP, 2016 WL 1171584 (S.D.N.Y. Mar. 22, 2016) (distinguishing Plaintiff's burden to *allege* temporal proximity from her burden to *establish* a causal connection). Plaintiff has, in fact, alleged a causal connection based on temporal proximity, and she is not required to provide other evidence of causation to survive a motion to dismiss. At this stage, then, Plaintiff has sufficiently pled a claim for Title VII retaliation, and the Court cannot dismiss the claim for lack of a weightier causal connection allegation.

Nor can the Court dismiss the retaliation claim on the basis that the claim is precluded due to the fact findings in the 3020-a Hearing. Even if the Court were to hold that the Plaintiff was given a full and fair opportunity to litigate at the 3020-a Hearing and thus, the factual findings are entitled to preclusive effect, the 3020-a Hearing clearly did not address Plaintiff's claims of retaliation.[7] *See Burkybile v. Board of Education of the Hastings-on-Hudson Union Free Sch. Dist.,* 411 F.3d 306, 312 (2d Cir. 2005). Plaintiff alleges, and the hearing opinion confirms, that the hearing officer did not consider any claims of sexual harassment and discrimination, let alone retaliation. Collateral estoppel applies only if "the issue in question was actually and necessarily decided in a prior proceeding." *Colon v. Coughlin,* 58 F.3d 865, 869 (2d

---

[7] Because the factual findings of the 3020-a Hearing will not affect the Court's decision, at this stage, the Court need not decide whether it would be appropriate to give the 3020-a Hearing preclusive effect and whether the Plaintiff was afforded a full and fair opportunity to litigate.

Cir. 1995). Therefore, because Plaintiff's retaliation claim was not expressly decided at the 3020-a Hearing, she cannot be estopped from pursuing that claim now. *See Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 471 (S.D.N.Y. 2011) (citing *Morey v. Somers Cent. Sch. Dist.*, No. 06 Civ. 1877, 2007 WL 867203, *5 (S.D.N.Y. Mar. 21, 2007) (collateral estoppel does not bar a plaintiff's retaliation claim where "the record of administrative hearing is devoid of any evidence that the issue of retaliation was actually litigated and necessarily decided"); *Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001) (holding that an administrative finding concerning a plaintiff's termination "could have preclusive effect on her Title VII claim in federal court only if [she] had unsuccessfully sought to contest her discharge ... leading to a judgment on the *same claim or issue*" (emphasis added))). *See also Burkybile,* 411 F.3d at 313 ("The record does not reflect that any constitutional claims were raised at the Section 3020–a hearing, so we do not take these as decided.")*.*

Moreover, assuming *arguendo* that the Court credited the 3020-a Hearing's determination that Defendants had just cause to terminate Plaintiff, this finding is not dispositive of Plaintiff's retaliation claim. Termination for cause does not preclude the possibility of termination motivated by unlawful animus. *Leon v. New York City Dep't of Educ.*, 612 F. App'x 632, 635 (2d Cir. 2015). "[A] hearing officer's determination that [the plaintiff] had engaged in the charged conduct, and that these violations called for h[er] termination, does not preclude a jury from later finding that [the plaintiff] was also terminated at least in part because of [discriminatory reasons]. The plaintiff could be successful on the [discrimination or retaliation] claims even if the jury were to accept that there were legitimate reasons for terminating h[er], too." *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 47 (2d Cir. 2014). Thus, Plaintiff's claim

for retaliation is not precluded by the findings from the 3020-a Hearing. Defendants' motion to dismiss the Title VII retaliation claim is therefore denied.

## IV.     State and Local Law Discrimination Claims

As noted *infra,* Plaintiff alleges violations of the NYSHRL and WHRL, in addition to the Title VII violations. Defendants contend that these claims are procedurally barred by the election of remedies provisions of the NYSHRL and WHRL. (Defs.' Memo, at 15-16.) As an initial matter, the WHRL does not expressly provide a private cause of action.[8] WHRL § 700.11 ("Except as otherwise provided in this chapter, any person claiming to be aggrieved by an unlawful discriminatory practice may, personally or by an attorney at law, make, sign and file *with the commission* a verified complaint …") (emphasis added). *Compare* N.Y.C. Admin. Code § 8–502(a) ("Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice ... shall have a cause of action in any court of competent jurisdiction …"). *See also* Mallory and Leibowitz, *Local Laws and Government Policies Prohibiting Discrimination Based on Gender Identity in New York*, THE WILLIAMS INSTITUTE: UCLA SCHOOL OF LAW, at 4 (June 2013), *available at* http://williamsinstitute.law.ucla.edu/wp-content/uploads/Mallory-Liebowitz-NY-local-laws-Jun-2013.pdf ("Westchester County does not expressly provide a private cause of action, but does empower its human rights commissions to investigate claims of discrimination and provide remedies, as discussed in more detail below."); WESTCHESTER COUNTY HUMAN RIGHTS COMMISSION, ANNUAL REPORT 2010-2011, at 11 ("Unlike the WCHRL, the Westchester County Fair Housing Law provides Complainants with a

---

[8] In addition, the WHRL provides that a complainant may not simultaneously file a complaint with the Westchester Human Rights Commission and the NYSDHR. WHRL § 700.14(a)(2) ("[T]he commission shall not have jurisdiction to entertain or initiate a complaint where: The complainant or party aggrieved has filed a complaint with the New York State Division of Human Rights … based upon the same transaction or occurrence or series of transactions or occurrences which are the subject of the complaint filed or sought to be filed with the commission").

14

private cause of action that may be filed in a court of competent jurisdiction.")[9] "The rights of action [Plaintiff] attempts to assert are self-limiting, statutorily and code-created rights. Consequently, [Plaintiff] can only assert the rights of action as prescribed by the respective statute and code. Simply put, a party can only exercise a statutory or code-created right of action as the statute or code provides." *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002). Because the WHRL does not explicitly create a right of action, Plaintiff cannot exercise her rights under WHRL in this forum.

In addition, Plaintiff cannot sustain an action under the NYSHRL, as any claim related to the same discriminatory conduct alleged in the NYSDHR complaint is prohibited by the election of remedies section of the NYSHRL. The NYSHRL provides, in relevant part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages ... unless such person had filed a complaint hereunder or with any local commission on human rights ... provided that, where the division has dismissed such complaint on the grounds of administrative convenience ... such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9). The Second Circuit has held that N.Y. Exec. Law § 297(9) "precludes a cause of action if the [plaintiff] has filed a complaint with any local commission on human rights." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000). This prohibition applies to state law claims filed in federal court. *See id.* (citing *Wiesman v. Metro. Museum of Art,* 772 F.Supp. 817, 819 (S.D.N.Y.1991)). "When the New York State Division of Human Rights has issued a finding of 'no probable cause ... plaintiff's claims ... are barred by the law['s] election of remedies provisions because she has already litigated the claims before the Division of Human Rights. The bar is jurisdictional, and the claims must be dismissed pursuant

---

[9] *Available at* http://westchestercountyny.iqm2.com/Citizens/FileOpen.aspx?Type=4&ID=8057&MeetingID=2596.

to Rule 12(b)(1), Fed. R. Civ. P.'" *Guardino v. Vill. of Scarsdale Police Dep't*, 815 F. Supp. 2d 643, 646 (S.D.N.Y. 2011) (citing *Illie–Stout v. Barrier Free Living,* No. 08 Civ. 6388, 2009 WL 81151 at *1–2 (S.D.N.Y. Jan. 12, 2009)).

Here, there is no dispute that the Amended Complaint raises the same claims, based on the same instances of discrimination and retaliation, as Plaintiff previously charged in her NYSDHR complaint. Additionally, the NYSDHR determined, after investigation and review, that there is no probable cause to believe Defendants engaged in discriminatory conduct. NYSDHR Order, Case No. 10167841, Federal Charge No. 16GB402287. Therefore, to the extent that the Amended Complaint attempts to reassert these NYSHRL claims, the claims are barred by the election of remedies doctrine and must be dismissed with prejudice. *See, e.g., Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013) ("The District Court properly ruled that [plaintiff's] NYSHRL claim was barred on the basis of election of remedies," which "precludes resort to courts after claims have been filed with a local commission on human rights."). *See also Daniel v. T & M Prot. Res. LLC*, 87 F. Supp. 3d 621, 630 (S.D.N.Y. 2015), *appeal dismissed* (Apr. 30, 2015), *reconsideration denied*, No. 13 CIV. 4384 PAE, 2015 WL 783349 (S.D.N.Y. Feb. 24, 2015) (dismissing plaintiff's claims that were previously brought under the NYSHRL); *Diagne v. New York Life Ins. Co*., No. 09 CIV 5157 GBD GWG, 2010 WL 5625829, at *8 (S.D.N.Y. Dec. 8, 2010), *report and recommendation adopted*, No. 09 CIV 5157 GBD GWG, 2011 WL 204905 (S.D.N.Y. Jan. 21, 2011), *aff'd*, 472 F. App'x 56 (2d Cir. 2012) (same).

Plaintiff's argument that she did not have a full and fair opportunity to litigate the NYSDHR proceeding does not alter this conclusion. If Plaintiff had a concern or was unsatisfied with the NYSDHR's determination, her remedy lies only in an appeal to the Supreme Court of State of New York. N.Y. Exec. Law § 298. Plaintiff "failed to appeal the adverse rulings by the

NYSDHR to the Supreme Court of the State of New York, and instead attempts to relitigate her claims in the United States District Court, in contravention of the statutory and code schemes detailed above." *York,* 286 F.3d at 127. *See also MacEntee v. IBM (Int'l Bus. Machines),* 783 F. Supp. 2d 434, 447 (S.D.N.Y. 2011), *aff'd sub nom. MacEntee v. IBM,* 471 F. App'x 49 (2d Cir. 2012) ("Plaintiff had the opportunity to appeal the NYSDHR's no probable cause determination by filing to the Supreme Court of the State of New York within sixty days of the NYSDHR determination. § 298. Plaintiff failed to appeal NYSDHR's adverse ruling and is thereby justly barred from re-litigating those claims in this Court."). Accordingly, Plaintiff's NYSHRL and WHRL claims are dismissed.

**V.     Breach of Contract Claim**

Plaintiff's remaining state law claim asserts a breach of contract claim against defendant YBOE for allegedly breaching the CBA executed with YFT. Defendants move to dismiss this claim on a number of bases, including that Plaintiff has not filed a notice of claim. The notice of claim required under Education Law § 3813(1) is a statutory condition precedent to bringing an action or proceeding against a school district or a board of education. *Vail v. Bd. of Co-op. Educ. Servs., Second Supervisory Dist., Erie-Cattaraugus Ctys.*, 115 A.D.2d 231, 232, 496 N.Y.S.2d 145, 147 (4th Dept. 1985). A plaintiff is required to file a notice of claim for any case seeking to enforce *a private right* against a School Board, a School District or its employees. *Augustin v. Enlarged City Sch. Dist. of Newburgh*, 616 F. Supp. 2d 422, 446 (S.D.N.Y. 2009) (emphasis added). "Inasmuch as the disposition of [the] plaintiff's claim [is] not intended nor could it directly affect or vindicate the rights of others, her action is properly characterized as one seeking the enforcement of private rights." *Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.,* 127 F. Supp. 2d 452, 455 (S.D.N.Y. 2001). Thus, in the instant case, Plaintiff was required to file a notice of claim.

There is no dispute that, here, Plaintiff did not file a notice of claim. Nor has plaintiff sought leave to file a late notice of claim. Instead, in response to Defendants' motion to dismiss, Plaintiff argues that she should be allowed to file a late notice of claim. (Pl.'s Memo, at 20-21.) However, a court is without power to authorize the late filing of a notice of claim, or to order that a late filed claim be deemed timely *nunc pro tunc,* where the statute of limitations has expired. N.Y. Educ. Law § 3813(2-b); *Santiago v. Newburgh Enlarged City Sch. Dist*., 434 F. Supp. 2d 193, 197 (S.D.N.Y. 2006). "The statute of limitations can, of course, be equitably tolled, but the burden rests with plaintiff to prove her entitlement to a toll, and the burden is steep." *Santiago*, 434 F. Supp. 2d at 197 (citing *Montiel v. New York City Health & Hospitals Corp*., 209 A.D.2d 491, 619 N.Y.S.2d 628 (2d Dept.1994)). As a result, Plaintiff argues that either (1) her breach of contract claim is timely, or (2) the statute of limitations should be equitably tolled. (Pl.'s Memo, at 20-21, 23.)

The parties agree that the statute of limitations for filing a lawsuit against a Board of Education is one year. N.Y. Educ. Law § 3813(2-b). Plaintiff first argues that her action is timely because she filed her NYSDHR complaint within the one year statute of limitations. Plaintiff, however, cites no support for this assertion that the statute of limitations is somehow tolled upon the filing of a state administrative complaint regarding discrimination, unrelated to the breach of contract claim. Plaintiff did not need a right to sue letter to bring a state law breach of contract action. Plaintiff did not file her complaint containing the breach of contract claim until February 2, 2015—well after the expiration of the one-year statute of limitations even from the latest possible day of breach, November 18, 2013. Thus, the breach of contract claim is untimely.

Plaintiff argues, in the alternative, that the statute of limitations should be equitably tolled because she was terminated from her job and had no income with which to hire an attorney.

(Pl.'s Memo, at 21.) "[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising h[er] rights." *Zerilli-Edelglass v. New York City Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003) (citing *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (internal quotation marks and alterations omitted). A plaintiff is not entitled to an equitable tolling if he or she, "acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001). Plaintiff's proposed explanation does not entitle her to an equitable tolling. Plaintiff was not prevented in any exceedingly unfair way from exercising her rights. Despite her termination and lack of income, Plaintiff was nonetheless capable of filing her complaint with the NYSDHR on March 24, 2014. Thus, Plaintiff was certainly capable of protecting her rights, and the Court will not invoke such an extreme remedy to save Plaintiff from her failure to do so. Therefore, Plaintiff's state law breach of contract claim must also be dismissed for failure to file a notice of claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's sole remaining claim is her Title VII retaliation claim against YBOE; all other claims have been dismissed. Accordingly, the Court respectfully directs the Clerk to terminate the motion at ECF No. 18 and to terminate the Individual Defendants. Defendant YBOE is directed to file an answer to the Complaint within 30 days of the date of this Order. The parties are directed to appear for an initial pre-trial conference on July 15, 2016 at 11:00 a.m. The parties are further directed to complete and bring a completed case management plan to the July conference.

Dated:  May 27, 2016
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge