UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

CARMEN GARCIA,

                               Plaintiff,

-against-

YONKERS BOARD OF EDUCATION,
EDWIN QUEZADA, ANGELA ARIAS,
RAFAEL PASIAN, ANTOINE ATINKPAHOUN,
and RAMON MARTINEZ

                              Defendants.

---------------------------------------------------------------

15 Civ. 0767 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Carmen Garcia's ("Plaintiff") action, which was instituted on February 2, 2015 and thereafter amended on June 26, 2015 (the "Am. Compl."), is still pending against defendant the Yonkers Board of Education ("YBOE" or "Defendant").[1] Plaintiff's remaining cause of action asserts retaliation in violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII").[2] Presently before the Court is the Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (the "Defendant's Motion"). For the following reasons, the Defendant's Motion is GRANTED.

---

[1] In addition to the YBOE, Plaintiff initially sued Edwin Quezada, Angela Arias, Rafael Pasian, Antoine Atinkpahoun, and Ramon Martinez (the "Individual Defendants"). (*See* ECF No. 15.) By Opinion and Order dated May 27, 2016 (the "2016 Opinion"), this Court granted in part and denied in part Defendants' motion to dismiss the amended complaint. (*See* ECF No. 25.) This Court thereby dismissed the Amended Complaint against the Individual Defendants, as Title VII does not permit individual liability. (*Id.* at 8, 20.)

[2] Plaintiff originally alleged causes of action sounding in gender discrimination in violation of Title VII, the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290–97; and Westchester County Human Rights Law ("WHRL") § 700.01, and a breach of contract claim for an alleged violation of the collective bargaining agreement. (*See* Am. Compl.) In the 2016 Opinion, in addition to dismissing all claims against the Individual Defendants, this Court also dismissed the Title VII, NYHRL, and WHRL discrimination claims, as well as the contract claim, leaving only Plaintiff's retaliation claim. (*See* ECF No. 25.)

## BACKGROUND

All facts are taken from the Amended Complaint, Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1") (ECF No. 66), Plaintiff's Rule 56.1 Statement of Undisputed Material Facts ("Plf. Resp.") (ECF No. 65), Defendant's Counter Response to Plaintiff's 56.1 Statement ("Def. Cntr.") (ECF No. 63), and are uncontested except where indicated.

Plaintiff was employed by the City of Yonkers School District (the "District") from 2001 through 2013. (*See* Plf. Resp. ¶1; *see also* Declaration of Joanna Topping in Support of Defendant's Motion ("Topping Decl.") (ECF No. 56), Ex. 34.) She was a tenured mathematics teacher at Lincoln High School ("Lincoln") beginning in 2001 until she was transferred in March of 2012, following an incident in her classroom. (*See* Plf. Resp. ¶¶1-2.)

Plaintiff maintains that during the 2006 – 2007, 2007 – 2008, and 2008 – 2009 school years, she was sexually harassed by fellow mathematics teacher, Rafael Pasian. (*See* Am. Compl. (ECF No. 11) ¶ 38, 45, 50.) Plaintiff further alleges that she reported this misconduct as soon as it happened, but the Defendant denies receiving such notice.[3] Over the following years, Plaintiff was involved in a series of incidents of misconduct occurring between her and her students. (*See* Plf. Resp. ¶¶2-9; Topping Decl., Ex. 4 at 5-14; Ex. 32 at DEF00595-97.) In June of 2013, Defendant preferred disciplinary charges against Plaintiff, (*see* Plf. Resp. ¶¶19-21), after which a hearing pursuant to Education Law § 3020-a (the "3020-a Hearing") was held which upheld the charges against Plaintiff and recommended termination as the appropriate penalty, (*id.* ¶22.) Plaintiff was thereafter terminated.

One of the events leading to Plaintiff's disciplinary charges occurred on March 7, 2012.

---

[3] Substantive claims of discrimination arising out of this alleged conduct were dismissed in the 2016 Opinion as untimely. (*See* ECF No. 25.)

During one of Plaintiff's classes, Assistant Principal Johnathan Cartica ("Cartica") overheard a loud commotion coming from Plaintiff's classroom and approached to see Plaintiff "standing 'very close' to a male student."[4] (*See* Topping Decl., Ex. 4 ("3020-a Dec.") at 10; Plf. Resp. ¶¶2-3.) During this incident, Plaintiff yelled at the student "I am going to smack you", though Plaintiff denied she ever said as much.[5] (*See* Plf. Resp. ¶3.) Shortly after this incident occurred, Plaintiff was transferred to the YBOE Central Office while the District investigated the incident. (*See id.* ¶2.) Plaintiff was not transferred back to Lincoln; instead, she was assigned to work at the Early College/Roosevelt High School ("Early College"). (*Id.* ¶4.) On September 4, 2012, Defendant sent a memorandum to Plaintiff confirming her involuntary transfer thereto. (*Id.* ¶5; *see also* Topping Decl., Ex. 20.)

Plaintiff reported for her first day of work at Early College in September 2012, but did not return thereafter. (*See* Plf. Resp. ¶9.) The Hearing Officer at Plaintiff's subsequent disciplinary hearing found that Defendant assigned Plaintiff to Early College and that Plaintiff "understood that she was assigned to Early College, at least on a temporary basis."[6] (*See* 3020-a Dec. at 19.) Plaintiff, however, believed this transfer was unlawful and in violation of her Collective Bargaining Agreement (the "CBA"), and her union, the Yonkers Federation of Teachers (the

---

[4] Prior to the March 7, 2012 incident, two other incidents occurred during Plaintiff's class which would later, along with the March 7, 2012 incident and Plaintiff's subsequent refusal to report to work during the 2012-13 school year, become the subject of the disciplinary charges. Specifically, in December of 2011, an incident occurred in Plaintiff's classroom wherein there was a verbal altercation between Plaintiff and one of her students, who Plaintiff contends was being disruptive. (*See* Topping Decl., Ex. 4 ("3020-a Decision") at 7-8.) The following month, in January of 2012, Plaintiff was assigned to teach a specialized class for students struggling with math. (*Id.* at 9.) Plaintiff was absent on the date midterm examinations were administered, and the following day administered a midterm examination to her students though they had already taken one the previous day. (*Id.* at 9-10; *see also* Topping Decl., Ex. 6 at 25-26.)
[5] Plaintiff's contention that whether she did or did not say as much is a question for the jury, is incorrect. As described in further detail, *infra* I, the 3020-a Hearing Officer already made a factual determination that the evidence weighed against Plaintiff on this issue, and such a determination is entitled to preclusive effect.
[6] Arguments to the contrary are afforded no weight here. Again, as described in further detail, *infra* I, the factual findings of the Hearing Officer are afforded preclusive effect. Nevertheless, Plaintiff's position on this issue is contradictory. (*Compare* Plf. Resp. ¶9 (Plaintiff "denies that she was assigned to Early College . . .") *with* Plf. Resp. 4 (admitting she was assigned to work there).)

3

"Union") filed a grievance on her behalf. (*Id.* at 18-19.) When her grievance was denied, the Union went to arbitration, which was resolved in April of 2013. (*See* Plf. Resp. 17.) During this time, Plaintiff refused to report to Early College, leading the Hearing Officer to determine that Plaintiff "chose not to comply with the transfer, but to await the outcome of the arbitration." (*See* 3010-a Dec. at 20.)

From April 2012 through January 2013, including during the pendency of her grievance, Plaintiff periodically wrote to the Superintendent of Schools, Bernard Pierorazio ("Pierorazio"), regarding her interest in returning to a teaching position at Lincoln. (*See* Plf. Resp. ¶10.) At no point in any of these letters did Plaintiff allege that she was sexually harassed. (*Id.* ¶11.) Pierorazio could not recall if he read or responded to these letters, but Plaintiff contends that she received no responses thereto. (*See* Def. Cntr. ¶44.) In early February of 2013, Plaintiff appeared, unannounced, at the homes of both Pierorazio and Edwin Quezada ("Quezada"), former Principal at Lincoln. (*See* Plf. Resp. ¶12.) Plaintiff was then told by the local police to refrain from doing so again. (*Id.* ¶13.)

At the same time, Plaintiff filed a report with the Yonkers Police Department complaining that she was improperly transferred from her position at Lincoln and that she was sexually harassed while she was teaching there. (*Id.* ¶14.) On March 14, 2013, Defendant received a letter from Plaintiff alleging that she was improperly transferred and sexually harassed while employed at Lincoln and enclosinga copy of Plaintiff's police report from February 2013.[7] (*Id.* ¶15.)

Plaintiff's grievance regarding her transfer to Early College was ultimately resolved in

---

[7] Plaintiff also contends that she complained to various administrators, including Quezada and Pierorazio, of the alleged sexual harassment at various other times prior to March 2013. Defendant disputes the veracity of these allegations in whole or in part. (*See* Def. Cntr. ¶¶31, 43.) Such a dispute is immaterial for purposes of this motion, as Defendant admits that on March 14, 2013, it received Plaintiff's complaints of sexual harassment, including a copy of her police report, (*see* Plf. Resp. ¶15), which this Court has already deemed sufficient as a protected activity for purposes of a retaliation claim, *see Garcia v. Yonkers Bd. of Ed.*, 188 F. Supp. 3d 353, 362 n. 4 (S.D.N.Y. 2016), and is the most recent protected activity.

April of 2013. (*See* Plf. Resp. ¶17.) Plaintiff's position was that her transfer to the Central Office and thereafter Early College violated the CBA because she had tenure and thus was only subject to involuntary transfer under limited circumstances. (*Id.* ¶16; 3020-a Dec. at 19; *see also* Topping Decl., Ex. 6 at 20.) After Plaintiff's grievance was denied by the District, the Union took Plaintiff's grievance to arbitration. (*See* 3020-a Dec. at 15.) The arbitration hearing was held on April 3, 2013, during which time the District stated that the decision to transfer Plaintiff was made to protect the safety of the students and teachers, a permissible reason under the CBA for involuntary transfer of a tenured professor. (*Id.* at 15, 19-20; *see also* Topping Decl., Ex. 31 at 16.) In light of this information, the Union withdrew Plaintiff's grievance. (*See* 3020-a Dec. at 20.) Though Plaintiff's grievance was withdrawn, an implicit acknowledgement that the transfer was proper, Plaintiff did not return to Early College. (*Id.* at 21.)

Defendant preferred disciplinary charges against Plaintiff on June 19, 2013. (*See* Plf. Resp. ¶¶19-21.) The charges included dereliction of duty, insubordination, and conduct unbecoming a teacher, based on various allegations of misconduct including the incidents from December 2011, January 2012, March 2012, and Plaintiff's absence from Early College during the 2012-13 school year. (*See* 3020-a Dec. at 3-5; *see also* Plf. Resp. ¶21; Topping Decl., Ex. 32 at DEF00595-97.) The 3020-a Hearing was held before Hearing Officer Ruth Moscovitch (the "Hearing Officer") on October 22, 2013 to ascertain whether the charges preferred were substantiated and termination was the appropriate penalty. (*See* Plf. Resp. ¶22.)

Prior to the commencement of the 3020-a Hearing, the Hearing Officer contacted Plaintiff by letters dated September 13, 2013, September 27, 2013, and October 8, 2013. (*See* Topping Decl., Exs. 28-30.) In the first letter, the Hearing Officer stated that she was notified by the Union that Plaintiff would be proceeding *pro se* during the 3020-a proceedings, (*see* Topping Decl., Ex.

5

28), and advised that the 3020-a Hearing was scheduled for October 22, 2013, (*see* Plf. Resp. ¶23.) The second letter informed Plaintiff that a pre-hearing was scheduled for October 7, 2013, and advised that such a hearing was necessary to "ensure that [Plaintiff] underst[ood] fully the hearing procedure" and to provide her an "opportunity to prepare for the" substantive hearing. (Topping Decl., Ex. 29; *see also* Plf. Resp. ¶24.) The final letter was sent after Plaintiff failed to appear for the October 7, 2013 pre-hearing and advised that the substantive hearing was still scheduled for October 22, 2013. (*See* Plf. Resp. ¶25; *see also* Topping Decl., Ex. 30.)

As scheduled, the 3020-a Hearing took place on October 22, 2013. Before evidence was presented, the Hearing Officer explained to Plaintiff how the hearing would proceed, that Plaintiff would have an opportunity to question the District's witnesses, object to its evidence, and present her own evidence and witnesses. (*See* Topping Decl., Ex. 5 at 3-7.) At the hearing, the District called four witnesses and entered 24 exhibits into evidence. (*See* 3020-a Dec. at 2.) Plaintiff was afforded an opportunity to cross-examine each witness, and chose only to cross-examine Cartica. (*See* Topping Decl., Ex. 5 at 31, 67-68, 107-114; 124.) Plaintiff was also afforded an opportunity to review any evidence entered by the District which she claimed she had not previously received. (*Id.* at 124.) Thereafter, Plaintiff was provided an opportunity to present her case and she testified as the sole witness on her behalf and entered one letter exhibit which contained thirteen attachments into evidence. (*See* 3020-a Dec. at 2-3; *see also* Topping Decl., Ex. 5 at 134-262.) After the Hearing Officer heard all of the evidence, both parties gave their summations and the matter was closed for consideration. (Topping Decl., Ex. 5 at 269-72.)

On November 18, 2013, the Hearing Officer issued her decision. (*See* 3020-a Dec. at 34.) Principally, the Hearing Officer determined that Plaintiff chose not to comply with her transfer to Early College for the 2012-13 year and chose instead to "await the outcome of the arbitration."

6

(3020-a Dec. at 20.) In spite of the Union's decision to withdraw Plaintiff's grievance, Plaintiff "did not report to work", and therefore disobeyed the transfer "at her peril". (*Id.* 21.) The Hearing Officer concluded that Plaintiff had "no reasonable basis to refuse an assignment in her subject – mathematics – at Early College", (*see* 3020-a Dec. at 20-21), and that her absence during the 2012-13 year prior to April 3, 2013, thus constituted an impermissible act of "self-help", (*id.*) Consequently, the Hearing Officer held that the charge of dereliction of duty was substantiated. (*Id.* at 22.) The Hearing Officer also sustained the charges of insubordination and conduct unbecoming a teacher. (*Id.* at 23, 31.) In view of the record before her, the Hearing Officer found that termination was the appropriate remedy, (*see id.* at 32-33), and Plaintiff was thereafter terminated on November 20, 2013 by Defendants after an executive session of the Board of Education, (*see* Topping Decl., Ex. 34.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of*

*Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

**DISCUSSION**

II. <u>**Preclusive Effect of 3020-a Hearing Findings**</u>

It is well settled that "federal courts must give state-court judgments the same preclusive effect as they would receive in courts of the same states." *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2005). Though administrative agency and arbitration decisions are not traditionally considered state-court judgments for purposes of the Full Faith and Credit Act, *id.*, "New York courts give quasi-judicial fact-finding preclusive effect where there has been a full and fair opportunity to litigate," *id.* There is no

question that at a 3020-a Hearing, determinations are made in a quasi-judicial capacity, *see* N.Y. Educ. Law § 3020-a(4); thus, the factual findings rendered therein are given preclusive effect provided the parties had a full and fair opportunity to litigate, *see Burkybile*, 411 F.3d 312 (quoting *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986)).

Plaintiff merely argues that the 3020-a Hearing did not reach the issue of sexual harassment or retaliation and thus the decision should have no preclusive effect on this matter. (*See* Plf. Br. at 17.) There is no question that 3020-a Hearing Officer did not consider retaliation, and thus her determination does not preclude a claim for retaliation, as this Court already articulated in the 2016 Opinion. *See Garcia v. Yonkers Bd. of Ed.*, 188 F. Supp. 3d 353, 362-63 (holding that Plaintiff's retaliation claim was not precluded based on the 3020-a Hearing). Nevertheless, this Court may give preclusive effect to the factual findings of the 3020-a Hearing Officer, insofar as such findings preclude Plaintiff from arguing facts to the contrary. *See Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 49 (2d Cir. 2014) (affording preclusive effect to factual findings of hearing officer); *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 471(S.D.N.Y. 2011) ("Plaintiff is estopped from challenging any of the factual findings made during [the 3020-a] proceeding."). The record is clear that Plaintiff had a full and fair opportunity to litigate; she was permitted to cross-examine the District's witnesses, present her own testimony and evidence, and give an opening statement and closing argument. (*See* 3020-a Dec. at 2; Topping Decl., Ex. 5 at 31, 67-68, 107-114; 124.) Moreover, the procedure was explained to her by the Hearing Officer in detail at the beginning of the proceeding and at various points throughout.

Consequently, Plaintiff's arguments that she was not assigned to Early College, that she had the right to refuse the transfer, or that she never told a student "I am going to smack you", are precluded by the findings of the 3020-a Hearing Officer.

9

### III. McDonnell Douglas Standard

Title VII claims for retaliation are subject to the *McDonnell Douglas* burden-shifting standard. *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015); *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014). Under this standard, Plaintiff bears the initial burden of demonstrating her prima facie case. *Kirkland*, 760 F.3d at 225; *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) (citing *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446 (2d Cir. 1999)). Assuming Plaintiff demonstrates a prima facie case, the burden shifts to the defendant to provide a legitimate non-retaliatory reason for the adverse employment action, and upon such a showing, the burden shifts back to plaintiff who "must prove 'that the desire to retaliate was the but-for cause of the challenged employment action." *Ya-Chen Chen*, 805 F.3d at 70 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)); *see Kirkland*, 760 F.3d at 225 (noting that "the employee's admissible evidence must show 'that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer'").

#### A. Title VII Retaliation

A prima facie case for retaliation requires a showing that Plaintiff "participated in a protected activity, suffered an adverse employment action, and that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Ya-Chen Chen*, 805 F.3d at 70 (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)) (internal quotations omitted).

1. Prima Facie Case

Defendant only contests Plaintiff's ability to demonstrate a causal connection between her protected activity and her termination. (*See* Defendant's Brief in Support of the Motion ("Def. Br.") (ECF No. ) at 6-9.) The Court will focus its inquiry here.

"[T]he court's role . . . is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to *infer* a retaliatory motive." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citing *Donahue v. Windsor Locks Bd. of Fire Comm's*, 834 F.2d 54, 58 (2d Cir. 1987)) (emphasis added). "Title VII is violated if a retaliatory motive played a part in the adverse employment action even if it was not the sole cause." *Summer v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (citing *Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir. 1986)). Even if the employer had "objectively valid grounds for the discharge," Title VII is nonetheless violated if "the employer was motivated by retaliatory animus." *Id.* (citing *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)). Plaintiffs may prove a causal connection "either through direct evidence of a retaliatory animus or indirectly through evidence, for example, of the close proximity in time of the two events." *Dayes v. Pace Univ.*, 2 F. App'x 204, 208 (2d Cir. 2001) (summary order) (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Defendant argues that Plaintiff cannot rely on temporal proximity alone to defeat a motion for summary judgment. (*See* Def. Br. at 7.) Such a contention is incorrect.[8] Courts do permit plaintiffs to rely on temporal proximity alone to meet their prima facie burden for causal

---

[8] This Court acknowledges that in its 2016 Opinion it reasoned that the burden to demonstrate retaliation is lower on a motion to dismiss than a motion for summary judgment. *Garcia*, 188 F. Supp. 3d at 362. In so doing, this Court rejected the cases cited by Defendant for the proposition that three to four months was insufficient for temporal proximity on the ground that those cases resolved motions for summary judgment, not motions to dismiss. *Id.* Nevertheless, the law is clear that the Second Circuit has repeatedly declined to set a bright-line rule with respect to the outer limits of temporal proximity, even on a motion for summary judgment. *See Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013).

11

connection. The cases that do so, however, "uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dis't v. Breeden*, 532 U.S. 268, 273 (2001). The Second Circuit has explicitly declined to "draw[] a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013). Consequently, at times the Circuit has found three months to be insufficient, but eight months indicative of a causal connection. *Id.* (comparing *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80 (2d Cir. 1999) with *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2d Cir 1980)).

Here, the Defendant acknowledges that it was on notice of Plaintiff's complaints of sexual harassment by March 14, 2013. (*See* Plf. Resp. ¶15.) Charges were preferred against Plaintiff and a recommendation made that she be terminated for, *inter alia*, insubordination and dereliction of duty, on June 19, 2013. (*Id.* ¶21.) Consequently, the time between the Defendant's notice of the alleged sexual harassment and the adverse employment action was just over three months. This, standing alone is likely sufficient. Though many courts in this district have found two to three months to be insufficient to "allow for an inference of causation", *see Duarte v. St. Barnabas Hosp.*, 265 F. Supp. 3d 325, 353 (S.D.N.Y. 2017); *Murray v. Visiting Nurse Srvs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases); *Brown v. City of New York*, No. 11-CV-2915(PAE), 2013 WL 3789091, at *17 (S.D.N.Y. Jul. 19, 2013) (same), many others have reiterated the Second Circuit's refusal to create a bright-line rule, allowing courts to focus on "the context of each individual case", thereby holding periods as long as seven or eight months close enough for a causal connection, *Guzman v. News Corp.*, No. 09-CV-9323(LGS), 2013 WL 5807058, at *20 (S.D.N.Y. Oct. 28, 2013) (seven months sufficienct); *see Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 992 (S.D.N.Y. 2017) (citing cases holding three and

four months sufficient); *Mattera v JPMorgan Chase Corp.*, 740 F. Supp. 2d 561, 581 (S.D.N.Y. 2010) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) for proposition that four months is sufficiently short). The three month period between Defendant's receipt of Plaintiff's police report and the adverse employment action would, alone, be enough to meet a causal connection.

Any attempts Plaintiff has made to draw a causal connection based on temporal proximity alone, however, are shattered by the remainder of the record. Plaintiff's argument that the decision to prefer charges against her was not made until after her claims of sexual harassment were reported to the police is insufficient to persuade this Court otherwise. Plaintiff's argument rests on a view of the record that is cherry-picked for Plaintiff's benefit. Plaintiff points out that the conduct central to the June 2013 charges occurred as early as October 18, 2012 and March 19, 2012, and there was no reason for waiting as long as the District did to prefer charges against her. (*See* Plf. Br. at 13.) Such a description ignores critical facts: (1) despite an obligation to teach at Early College, Plaintiff refused to report for the entire 2012-13 school year (*see* 3020-a Dec. at 20-21); (2) Pierorazio testified that they waited until June 2013 in an effort to bring Plaintiff back to school, (*see* Topping Decl., Ex. 38 at 42-45); and (3) her grievance regarding the transfer to Early College was not resolved until April 2013 (after her police report was received by Defendant), at which point Plaintiff still refused to report to work, (*id.*)

Critical to the Court's determination is the last fact surrounding Plaintiff's grievance. Where, as here, there is "an intervening causal event that occurred between the protected activity and the allegedly retaliatory discharge" the causal connection that relied on temporal proximity may be defeated. *Hahn v. Bank of Am. Inc.*, No. 12-CV-4151(DF), 2014 WL 1285421, at *19 (S.D.N.Y. Mar. 31, 2014) (quoting *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562

13

(S.D.N.Y. 2005)); *Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998) (citing *Jeffries v. Harleston*, 52 F.3d 9, 14 (2d Cir. 1995) to note that superseding causes can break the causal chain with respect to retaliation); *Rumsey v. Northeast Health, Inc.*, 89 F. Supp. 3d 316, 336 (N.D.N.Y. 2015) (quoting *Joseph v. Marco Polo Network, Inc.*, No. 09-CV-1597, 2010 WL 4513298, at *18 (S.D.N.Y. 2010)). Here, the intervening act was the withdrawal of Plaintiff's grievance regarding her transfer, and her subsequent refusal to return to work at Early College despite this withdrawal. Plaintiff cannot meet her prima facie burden, and her case must be dismissed. The Court will nevertheless consider the remainder of the *McDonald Douglas* standard in brief.

2. Legitimate Non-Retaliatory Reason

Plaintiff concedes that a legitimate non-retaliatory reason for her termination has been offered. (*See* Plf. Br. at 15.)

3. Pretext for Retaliation

Even assuming Plaintiff was able to meet her prima facie case, her retaliation claim would still be ripe for dismissal as she has failed to demonstrate that a genuine issue of material fact exists as to pretext.

At the pretext stage, a plaintiff "may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment." *Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 403 (S.D.N.Y. 2014) (quoting *Zann Kwan v. Andalez Grp. LLC*, 737 F.3d 834 (2d Cir. 2013)). Though the pretext stage "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive", *Zann Kwan*, 737 F.3d at 846, "the plaintiff must show that retaliation was the determinative factor", *Summa*, 708 F.3d at 129. A Plaintiff can meet this burden by

14

"demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in employer's proffered legitimate, non-retaliatory reasons for its action." *Zann Kwan*, 737 F.3d at 846.

Plaintiff contends that "there are many inconsistencies, especially as concerns the decision to prefer charges", (Plf. Br. at 15), that should allow a finding of pretext. This Court disagrees. Plaintiff's summary of the testimony fails to show inconsistencies, implausibilities, or contradictions in the YBOE's "proffered legitimate, non-retaliatory reasons for its action." Indeed a review of the facts demonstrates that the parties central to the decision to terminate Plaintiff all indicated that they transferred Plaintiff out of Lincoln to protect the safety of the students and for the good of the school, (*see* Topping Decl., Ex. 31 at 16; *see also* 3020-a Dec. at 15, 19-20; *see also* Def. Br. at 9), and terminated her for her blanket refusal to report to work at Early College for an entire school year, even after her grievance was withdrawn, (*see* 3020-a Dec. at 20-21; Topping Decl., Ex. 34; Ex. 37 at 55; Ex. 38 at 37-45.)

Plaintiff's claim that Quezada and Louis Constantino, former Assistant Superintendent, did not "offer any reason for the delay in preferring charges against Plaintiff" (*see* Plf. Br. at 16), is unavailing at it fails to raise a triable issue regarding the true rationale for Plaintiff's termination, particularly in light of the superseding event that occurred – to wit, Plaintiff's refusal to report to Early College even after her grievance was withdrawn, (*see* 3020-a Dec. at 20-21.) In light of this information, as well as the determination by the Hearing Officer that termination was proper based on all of the evidence presented, Plaintiff is unable to demonstrate that retaliation was a determinative factor in either the decision to initiate disciplinary charges against Plaintiff or her termination.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED and Plaintiff's complaint is dismissed with prejudice. The Clerk of the Court is respectfully requested to enter judgment in Defendant's favor. The Clerk of the Court is further respectfully requested to terminate the motion at ECF No. 55 and terminate the action.

Dated: August 21, 2018            SO ORDERED:
       White Plains, New York

_____
NELSON S. ROMAN
United States District Judge